The execution of the note sued upon was expressly forbidden by the by-laws of the corporation, except on the authority of the board of directors. It is conceded that the note in suit was executed without such authority and that the plaintiff took the note subject to all defenses existing against the original payee. It follows, therefore, that the note is invalid and unenforceable unless it has been shown that its unauthorized execution was subsequently expressly or impliedly ratified. (14a C.J., pp. 373-382; Spelman v. Gold Min. Co., 26 Mont. 76, 66 P. 597, 91 Am. St. Rep. 402, 55 L.R.A. 640; McConnell v. CombinationMin. Mill. Co., 31 Mont. 563, 79 P. 248.) The unauthorized acts of W.W. Merk and Edna G. Merk in executing the note could be ratified only in the following manner: 1. By a formal resolution of the board of directors with full knowledge on its part of all the material facts and *Page 48 
circumstances connected with the transaction. 2. By accepting and retaining the benefits of the act, or making payments on account, with full knowledge by the board of the material facts and circumstances connected with the transaction.
A general blanket resolution purporting to ratify all acts, etc., without specifying what acts are intended to be ratified, is insufficient. (First State Bank v. Lang, 55 Mont. 146,174 P. 597, 9 A.L.R. 1139; McConnell v. Combination Min. Mill.Co., 30 Mont. 239, 76 P. 194, 104 Am. St. Rep. 703; s.c.,31 Mont. 563, 79 P. 248; Extension Gold Min. Co. v. Skinner,28 Colo. 237, 64 P. 198; Camden Land Co. v. Lewis, 101 Me. 78,63 A. 523; Hyams v. Old Dominion Co., 113 Me. 294,93 A. 747, L.R.A. 1915D, p. 1128, at 1133; 3 Thompson on Corporations, 2129.)
Directors cannot ratify their own illegal acts: The principle that an officer cannot ratify his own unauthorized acts is elementary. (Stanton v. Occidental Life Ins. Co., 81 Mont. 44,261 P. 620; McConnell v. Combination Min. Mill. Co., supra; 14a C.J., pp. 376, 377; 3 Thompson on Corporations, 2109;Montrose Land etc. Co. v. Greely Bank, 78 Colo. 240,241 P. 527; Bassett v. Fairchild, 132 Cal. 637, 64 P. 1082, 52 L.R.A. 611; Curtin v. Salmon River etc. Co., 130 Cal. 345,62 P. 552, 80 Am. St. Rep. 132; Western Nat. Bank v.Armstrong, 152 U.S. 346, 14 Sup. Ct. 572, 38 L.Ed. 470; Burns
v. National Min. etc. Co., 23 Colo. App. 545, 130 P. 1037.) A ratification, to be valid, has to be made by a quorum of disinterested directors. (Gordon Campbell Petroleum Co. v.Gordon Campbell Syndicate, 75 Mont. 261, 242 P. 540;Chamberlain v. Pacific Wool etc. Co., 54 Cal. 103; Graves
v. Mono Lake etc. Co., 81 Cal. 303, 22 P. 665; Nicholson v.Kingery, 37 Wyo. 299, 261 P. 122; Jones v. Morrison,31 Minn. 140, 16 N.W. 854; North Confidence Min. etc. Co. v.Fitch, 58 Cal.App. 329, 208 P. 328.)
The authorities are uniform to the effect that payments on an unauthorized note are insufficient to constitute ratification unless such payments are authorized by the board of directors, with full knowledge of all the facts and circumstances surrounding *Page 49 
the execution of the unauthorized instrument. (Marqusee v.Insurance Co. of N.A., 211 Fed. 903; Groeltz v. ArmstrongCo., 115 Iowa, 602, 89 N.W. 21; Bishop v. Burke,207 Mass. 133, 93 N.E. 254; American Rio Grande etc. Co. v. MercedesPlantation Co., (Tex.Civ.App.) 155 S.W. 286; Southern KansasR. Co. v. Logue, (Tex.Civ.App.) 139 S.W. 11; Bohart v.O'Berne, 36 Kan. 284, 13 P. 388; Peasly v. ProducersMarket, 86 Cal.App. 577, 261 P. 733; Western National Bank
v. Armstrong, supra; Koerner v. Northern P. Ry. Co.,56 Mont. 511, 186 P. 337; In re Roanoke Furnace Co., 166 Fed. 944; First State Bank v. Lang, 55 Mont. 146, 174 P. 597, 9 A.L.R. 1139; 14a C.J., pp. 354, 376, 377.)
To the defense of ultra vires we submit that as the action has taken the form of an equitable action, the following law is applicable: "The principles of equity and common honesty will not permit the mining company to obtain all of the benefits it was to receive under the provisions of said contract and then avoid the legal provisions of said contract by pleading ultra vires as to certain provisions of the contract." (First Nat. Bank ofWallace v. Callahan Min. Co., 28 Idaho, 627, 155 P. 673;Bear River Valley Orchard Co. v. Hanley, 15 Utah, 506,50 P. 611.) The defense of ultra vires is not sustained out of regard for a defendant, but only where public policy requires it. (Meholin v. Carlson, 17 Idaho, 742, 107 P. 755, 134 Am. St. Rep. 286.)
It is the contention of plaintiff that because of the facts as presented to the court, the defendant is estopped to deny its liability, for the reason that there is no dispute in the evidence but that the defendant received all of the benefits of the transaction. A case in point is Bossert v. Geis,57 Ind. App. 384, 107 N.E. 95, in which it was held "where a corporation borrowed money from its president without authority of the board of directors, and received and used the money in payment of the corporation's debts, it was estopped to deny the *Page 50 
legality of its indebtedness to the lender therefor." (EquitableTrust Co. of New York v. Washington-Idaho Water, Light PowerCo., 300 Fed. 601; Eureka Pub. Co. v. First Nat. Bank,59 Okla. 285, 159 P. 508; Flanagan v. American MineralsProducing Co., 108 Wn. 569, 185 P. 609; In re ProspectLeasing Co., 250 Fed. 707, 163 C.C.A. 39; Korn v. Spokane Eastern Trust Co., 276 Fed. 68; Huntington Brewing Co. v.McGrew, 64 Ind. App. 273, 112 N.E. 534; Laurel County v.Howard, 189 Ky. 221, 224 S.W. 762; Liberty Coal Min. Co. v.Frankel Coal Co., 206 Ky. 647, 268 S.W. 280; Griffin v.Bankers' Realty Inv. Co., 105 Neb. 419, 181 N.W. 169; Peabody
v. Pioneer Sand Gravel Co., 164 Wn. 26, 2 P.2d 714;American Concrete Units Co., Inc., v. National Stone-TileCorp., 115 Cal.App. 501, 1 P.2d 1084; United States Ind.Alcohol Co. v. Distilling Co., 89 N.J. Eq. 177, 104 A. 216;Woollard v. City of Albany, 190 N.Y. Supp. 741; Farmers'Nat. Bank v. Vaughn, 89 Okla. 41, 213 P. 748; Lemmon v.East Palestine Rubber Co., 260 Pa. 28, 103 A. 510; ItascaRoller Mill Elevator Co. v. Wooten, (Tex.Civ.App.)246 S.W. 678.)
"In an action by one bank against another for money loaned, and on a note representing the balance due, the loan and balance being established, it is immaterial whether the note was authorized by the directors." (First Nat. Bank v. CaliforniaNat. Bank, 100 Cal. xvii, 35 P. 639; McKee v. Title Ins. Trust Co., 159 Cal. 206, 113 P. 140; Blue Rapids Opera HouseCo. v. Mercantile Bldg. Loan Assn., 59 Kan. 778,53 P. 761; City of Spokane v. Amsterdamsch Trustees, 22 Wn. 172,60 P. 141; Hireen v. R.W. English Lbr. Co., 46 Colo. 216,104 P. 84.)
We respectfully invite the court's attention to its own decision in McConnell v. Combination Min. Mill. Co.,31 Mont. 563, 79 P. 248. "It is the manifest duty of the directors to obtain money to pay these current charges, either by borrowing or by levying an assessment upon the stockholders * * *. Their devotion of a part of the funds borrowed to unlawful purposes did not affect the obligations of *Page 51 
the company to the banks, even though it be conceded that the requirements of the by-laws as to the execution of the notes was not strictly observed. The company obtained the money and used it. The bank was entitled to have its demands satisfied." We submit that all that is required in an adjudication of this case is the substitution in the above language of the name, Ella F. Alward, in place of the word "bank": "The company obtained the money and used it, Ella F. Alward was entitled to have her demands satisfied."
The defendant, the Broadway Gold Mining Company, a Montana corporation, has appealed from a judgment against it and in favor of the plaintiff, Ella F. Alward, entered in an action on a promissory note.
The complaint alleges that the note was made, executed and delivered by the defendant corporation, on February 20, 1918, for $1,181.53, with interest at 10 per cent. per annum, to Mary E. Merk; that certain payments were made thereon by the defendant, leaving a balance due, at the time the action was commenced, of $2,045.90, and that the note was assigned to the plaintiff in January, 1925. The note is signed, "Broadway Gold Mining Co., by W.W. Merk, President. Attest: Edna G. Merk, Secretary."
By answer, the defendant denies that it executed the note or authorized its execution, or that any officer of the corporation had authority to execute it; denies that it ever recognized the note as its obligation, or knew of its existence until the complaint was filed. These denials are followed by an affirmative defense in which it is alleged that the by-laws of the corporation prohibit the contraction of any debts or the borrowing of money upon the credit of the corporation, except by the authority of the board of directors, which authority was not extended to the officers signing the note.
The mining company has been in existence for years; for the period from 1912 to February, 1918, it apparently was *Page 52 
under the exclusive control of the Merk family. W.W. Merk was president and treasurer, Edna G. Merk, his wife, secretary, and his mother, Mary E. Merk, was a director. While the by-laws provided for five directors, the board seems to have consisted of the three Merks and one H.W. Hathaway. On February 23, 1918, James E. Murray and A. Pincus advanced $10,400 for development work and other expenses, and to them was assigned a sizable block of stock of the corporation, whereupon W.W. Merk resigned as treasurer, and his wife resigned as secretary and from the board of directors; Hathaway also resigned from the board. Murray and Pincus were elected directors, and A. Pincus was elected treasurer.
The note in suit was executed and delivered to Mary E. Merk on February 20, 1918, or three days before the change in the management of the company. W.W. Merk testified that it was a renewal note for the balance due on a note for $1,000, executed in 1913, at which time his mother had a certificate of deposit for $1,000 which she "gave" to the company.
W.W. Merk continued to act as president of the corporation up to 1925, and, during the period from June, 1920, to July, 1923, while president, but not treasurer, made payments to Mrs. Merk aggregating $548.47, which were credited on the note, the subject[1] matter of this suit. The note was transferred by Mrs. Merk to her daughter, Mrs. Alward, after its due date and about six months prior to the commencement of the action. The plaintiff was not, therefore, a holder in due course, and all defenses existing as against the original payee are available in this action by the assignee. (Sec. 8459, Rev. Codes 1921; Northwestern ImprovementCo. v. Rhoades, 52 Mont. 428, 158 P. 832.)
The allegation of the answer to the effect that no debt could[2, 3] be contracted or money borrowed on the credit of the corporation without express authority of the board of directors, was established by the introduction of the by-laws, and it is conceded the action of W.W. Merk, as president, in receiving from his mother $1,000 and executing to her in the name of the corporation the original promissory note, and his action *Page 53 
in executing and delivering to her the renewal note which figures in this suit, were without authority and not binding on the company, unless subsequently ratified by the acts of the corporation. This, plaintiff contends, was accomplished, and, in proof thereof, produced alleged minutes of the meeting of the board on several occasions, which will be dealt with in their order.
The minutes of February 20, 1914, show that directors W.W. Merk, Mary E. Merk and H.W. Hathaway were present, and that W.W. Merk, as treasurer, submitted a "trial balance statement" of the company's financial condition, which contains, among many items, the entry "Bills payable $750." This "statement" was approved by the board. Merk testified that he, as president, had theretofore paid to Mary E. Merk, on the $1,000 note, $250, and the $750 represented the balance due thereon.
As the board of directors of the corporation consisted of five members, three acting directors were necessary to constitute a quorum. Under the law then in force (secs. 3833, 3836, Rev. Codes 1907), no business could be legally transacted unless a quorum was present, and, unless a quorum was present, no act of a lesser number of directors assuming to transact business would be binding on the corporation (Curtin v. Salmon River etc. Min.Co., 130 Cal. 345, 62 P. 552, 80 Am. St. Rep. 132).
Three members of the board, constituting a quorum, were physically present, but one of these, Mary E. Merk, the payee of the note, was directly interested in having the unauthorized action of W.W. Merk, in executing the note, ratified. The authorities are practically unanimous on the proposition that a director who is personally interested in a matter coming on for action before the board must be eliminated from the count in determining whether a quorum is present (2 Thompson on Corporations, 3d ed., sec. 1257; 2 Fletcher on Corporations, sec. 426), and it is sufficient to disqualify a director that the subject of consideration is the renewal of a note held by him (Smith v. Los Angeles etc. Assn., 78 Cal. 289, 20 P. 677, 12 Am. St. Rep. 53; Higgins v. Lansingh, 154 Ill. 301,
 *Page 54 40 N.E. 362; Curtin v. Salmon River etc. Min. Co., supra). It follows that such action as was taken in 1914 does not constitute a ratification. The same is true of the purported action of the board taken in January, 1917, at which time there were present but the three directors named above.
The next action of the corporation, which is urged as[4] ratification, is that of the stockholders in regular meeting assembled January 8, 1917, at which "all the acts and proceedings of the officers of the corporation heretofore done and performed are hereby ratified and approved, and endorsed," and the company, through its manager, "is authorized to pay all outstanding obligations of the company." The authorization to pay could only apply to the note in question, if the unauthorized act of W.W. Merk had been duly ratified, which had not been done up to that time, and, in order to render ratification effective at that meeting, the stockholders of the corporation, as principal, must have had full knowledge of all the material facts relative to the transaction. (3 Thompson on Corporations, 3d ed., sec. 2129; First State Bank of Hilger v. Lang, 55 Mont. 146,174 P. 597, 9 A.L.R. 1139; McConnell v. Combination M. M.Co., 30 Mont. 239, 76 P. 194, 104 Am. St. Rep. 703, and Id.,31 Mont. 563, 79 P. 248.) No showing was made that any stockholder, other than the Merks, had any knowledge of the execution of the original note.
W.W. Merk produced a "cash and journal book," in which he had[5] entered the note. Incidentally it might be noted that this book was retained by Merk personally for thirteen years prior to the trial, and was never seen by the directors in office after the reorganization of 1918. The fact that there was an entry of the note in this book did not impute knowledge to the stockholders, as they are not presumed to know the contents of records of directors' meetings or account-books of their corporation, and, as to them, "means of knowledge is not knowledge." (Camden Land Co. v. Lewis, 101 Me. 78,63 A. 523, 533; Cahall v. Lofland, 12 Del. Ch. 299, 114 A. 224; *Page 55 Anderson v. Scandia Min. Syndicate, 26 S.D. 558,128 N.W. 1016; 3 Cook on Corporations, 7th ed., sec. 731.)
The resolution now under consideration is similar to that commented upon in McConnell v. Combination M. M. Co.,30 Mont. 239, 76 P. 194, 202, 104 Am. St. Rep. 703, and condemned on the ground that the attempted ratification was of matters "not presented to the stockholders." (See, also, Klein v.Independent Brewing Assn., 231 Ill. 594, 83 N.E. 434.)
It is next contended that the renewal note, the note in suit,[6] though executed without authority (First State Bank v.Lang, supra), was rendered valid by the ratification of the acts of the officers and directors of the corporation at a directors' meeting held February 23, 1918. This meeting was called for the purpose of reorganization and passing control of the corporation to Murray and Pincus; it was attended by W.W. Merk, Mary E. Merk, Edna G. Merk and H.W. Hathaway; consequently, the elimination of Mary E. Merk on account of interest would leave three directors, or a quorum. However, again the attempted ratification was a blanket resolution respecting all acts of the officers and directors, and there is nothing in the record to indicate that director Hathaway had ever heard of the note in suit, executed without authority of the board but three days prior to the meeting, and, it must be remembered, the two remaining directors were also the president and secretary who executed the note, without authority; they were, so far as the corporation is concerned, wrongdoers.
It has been held that those who execute an unauthorized contract cannot subsequently ratify it, though they constitute a majority of the board of directors, or a majority of the stockholders (Oliver v. Rahway Ice Co., 64 N.J. Eq. 596,54 A. 460; Klein v. Independent Brewing Assn., supra;Farwell v. Pyle-National Electric H. Co., 289 Ill. 157,124 N.E. 449, 10 A.L.R. 363), but we need not apply this rather strict rule. *Page 56 
While knowledge of the affairs of a corporation by the[7] directors will be presumed in favor of an innocent third person, no such presumption is indulged in favor of the officers and directors. In the absence of any evidence that Hathaway had knowledge of the indebtedness, he cannot be held to have knowingly voted for ratification. (First State Bank v. Lang, supra.) With his elimination, there was no quorum present for the attempted ratification. Further, should we treat the action as a[8] ratification, we have only those who created the debt without authority, "indorsing and ratifying their own wrongful acts, which cannot be permitted." (McConnell v.Combination M. M. Co., supra.)
It is further urged that the payments made by W.W. Merk on the[9] note constituted a ratification. This contention is without merit, as Merk would be held to have ratified his own wrongful act; his unauthorized payments, even if made from corporate funds, could not bind the corporation or become its ratification. (2 Fletcher's Cyc. Corporations, sec. 761, and cases cited.)
Finally it is contended that the note was ratified by the[10] acceptance of benefits; but there is no showing that the $1,000 claimed to have been given to the corporation by Mrs. Merk ever reached its treasury or was used for corporate purposes, and it is clear that none of the stockholders or directors, other than the Merk family, had knowledge that the money had been accepted by Merk, as president or treasurer of the corporation, let alone used for the benefit of the corporation. Knowledge is an essential element of "ratification by acceptance of benefits." (Stanton v. Occidental Life Ins. Co., 81 Mont. 44,261 P. 620; Campbell v. Latonia Bldg. Loan Assn., 92 Pa. Super. 436. )
Plaintiff contends that the defendant is estopped to deny ratification, but, from what is heretofore said, it is clear that the elements of estoppel are entirely lacking.
While the strict rules above applied might not be warranted in[11] dealing with an innocent third party, their application is proper with respect to transactions between officers *Page 57 
and directors with their corporation (First State Bank ofHilger v. Lang, supra), who sustain a fiduciary relationship to the corporation (McConnell v. Combination M. M. Co., supra; Kleinschmidt v. American Min. Co., 49 Mont. 7,139 P. 785; Meagher v. Harrington, 78 Mont. 457, 254 P. 432), and must act with the utmost fairness and candor in such transactions (Mayger v. St. Louis M. M. Co., 68 Mont. 492,219 P. 1102; 3 Fletcher on Corporations, sec. 850; 2 Thompson on Corporations, 3d ed., sec. 1329). This case is clearly distinguishable from that of Godfrey L. Cabot, Inc., v. GasProducts Co., 93 Mont. 497, 19 P.2d 878.
The judgment is reversed and the cause remanded, with direction to enter judgment in favor of the defendant.
MR. CHIEF JUSTICE CALLAWAY, MR. JUSTICE ANGSTMAN, HONORABLE LYMAN H. BENNETT and HONORABLE R.M. HATTERSLEY, District Judges, sitting, respectively, in place of JUSTICES GALEN and FORD, disqualified, concur.