KNUDSEN, et al, Respondents, v. BURDETT, et al,
Appellants

(287 N. W. 673.)

(File No. 8215. Opinion filed October 11, 1939.)

**C. O. Trygstad** and **George M. Schlosser,** both of Brookings, for Appellants.

**Louis H. Smith,** of Sioux Falls, for Respondents.

RUDOLPH, J. The plaintiffs in this action are stockholders in the Sunshine Oil Company, and seek to have set aside the sale of certain assets of that company to the de-

fendants. The defendants, J. F. Haxton and George P. Reed, are directors of the Sunshine Oil Company, and the trial court found that these two directors and the other de-. fendants conspired to the end that the sale of these corporation assets was made to the defendants at a grossly inadequate and unfair price, and in fraud of the corporation of which the defendants, Haxton and Reed, were directors. It appears from the evidence that neither Haxton nor Reed were present at the meeting of the directors when the sale of these assets, which consisted of stock in another corporation of which Haxton and Reed were also directors, was authorized. However, both of these directors had been present at a directors' meeting held just a few days before this sale was authorized, and at which meeting the sale of this stock had been discussed. This stock which was sold to the defendants was stock in the Kingsbury County Holding Corporation, which was a company organized for the purpose of leasing and purchasing land with the object of prospecting for and developing any oil or mineral resource thereon. Approximately three months before the sale of this stock, the Kingsbury County Holding Corporation had commenced receiving substantial royalties from oil wells which had been developed on its property and of which fact all of the defendants were advised. The trial court found and no error is predicated thereon or upon the receipt of the evidence upon which the finding is based, that the value of this stock at the time of the sale was "from six to ten dollars per share." The defendants paid one dollar per share.

■ We believe the evidence is sufficient to support the court's finding that the defendants conspired to bring about the sale of this stock in the exact manner in which the sale was consummated. True, the offer to buy this stock was made by the defendant, Burdett, but it was made at a time when he was in Texas with the two defendants, Haxton and. Reed, and on the same day as the meeting attended by Haxton and Reed where the sale of this stock was discussed. It also appears that at the time Burdett made the offer to buy this stock he was entirely incapable financially of making the payment required, and this payment was in fact made

by all defendants. Within a very few days after the payment was made, the stock was transferred on the books of the company to the defendants substantially in accordance with the payments made by each. In the light of these facts, and other circumstances disclosed by the record which are unnecessary to relate, we believe the trial court was fully justified in disbelieving defendants' claim that this was a sale by the corporation to Burdett in which the other defendants were not to participate and in which they had no interest. Giving effect to the findings of trial court and the evidence upon which they are based, we must consider this sale by the corporation as a sale in which its two director-defendants were interested and from which they benefited.

■■ Every sale by a corporation to its officers is not subject to being set aside by the corporation or its stockholders. However, a sale by a corporation to its officer will be set aside by a court of equity if obtained by fraud, or by taking unfair advantage of the corporation. Troy Mining Co. v. White, 10 S. D. 475, 74 N. W. 236, 42 L. R. A. 549. The rule is stated in 2 Thompson on Corporations, Third Edition, page 792, as follows: "The fact that, when a director is dealing with the corporation, the latter is represented by other directors or officers, will not permit him to deal unfairly or to defraud the corporation if such transactions are not open, fair, and free from all suspicion of fraud, the corporation or its stockholders may have the contract set aside; and a court in determining whether the transaction was free from fraud will subject it to the most rigid scrutiny."

There is the further rule, which is without dispute, that is, that the burden is always upon the directors in transactions of the type here involved to show that the transaction was fair, in good faith, open, and above board. Chipola Valley Realty Co. v. Griffin, 94 Fla. 1151, 115 So. 541; Schemmel v. Hill, 91 Ind. App. 373, 169 N. E. 678; Hoyt v. Hampe, 206 Iowa 206, 214 N. W. 718, 220 N. W. 45; Witter v. Le Veque, 244 Mich. 83, 221 N. W. 131; Stanton v. Occidental Life Ins. Co., 81 Mont. 44, 261 P. 620; Hine v. Lausterer, 135 Misc. 397, 238 N. Y. S. 276; Green River Mfg. Co.

v. Bell, 193 N. C. 367, 137 S. E. 132; Nicholson v. Kingery, 37 Wyo. 299, 261 P. 122. See, also, cases cited in 2 Thompson on Corporations, Third Edition, page 815, note 96.

 Applying these well established rules to the facts before us we must hold, first, that it was the duty of these two defendant-directors to disclose to the other directors everything they knew regarding the value of this Kingsbury County Holding Corporation stock; and, second, the burden was upon these defendants to show that such disclosure was made. The defendants have failed to meet this burden. Nowhere in the record does it appear that the directors which authorized this sale were advised of the royalties being received by the Kingsbury County Holding Corporation, or the fact that oil was being produced upon its property. The burden being upon defendants, and they having failed to meet this burden, we must treat the case, so far as the facts are concerned, precisely as though it were established that defendant-directors had failed to make the disclosure. A very similar situation, with the exception that a sale by directors to the corporation was involved instead of a purchase, was before the Idaho court in the case of W. G. Jenkins & Co. v. Standrod, 46 Idaho 614, 269 P. 586, 588. We quote from the opinion in that case: "As directors of the plaintiff bank, the defendants bore to it a fiduciary relationship, and acted as trustees of the property intrusted to their care. Ryan v. Old Veteran Min. Co., 37 Idaho 625, 218 P. 381; Riley v. Callahan Min. Co., 28 Idaho 525, 155 P. 665; Magee on Banks & Banking, § 103; 3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1088. They were bound to perform their duty as directors with the utmost good faith. Camden v. Virginia Safe Deposit & Trust Corp., 115 Va. 20, 78 S. E. 596; Coombs v. Barker, 31 Mont. 526, 79 P. 1. As trustees, it was their duty to disclose to the other directors proposing to buy the notes in question information they had affecting the bank's interest. 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 902; 3 Id. § 1077. If defendants induced the other directors of plaintiff bank to accept notes which defendants knew were worthless, they were guilty of a breach of the trust reposed in them by the corporation,

whether such inducements were by way of actual misrepresentation of facts, or merely by concealment of such facts known to them. If there was added to mere failure to disclose facts known by them, as to the worthlessness of property which the other directors proposed to buy, the further fact that, as directors of the vendor corporation, they were affirmatively interested in the transaction adversely to plaintiff, their acts of concealment were a violation of the duties they owed plaintiff by virtue of their official capacity and the confidence which it had reposed in them. Though a director may deal with his corporation through the other members of the board, if the contract be fair and no advantage taken, yet directors, chosen by the stockholders of a bank for the prime purpose of safeguarding its investments cannot lay aside their trust at will, and deal as strangers with the other directors, so as to foist worthless securities upon the bank by concealing facts within their knowledge affecting their value."

We are of the opinion that the sale of this stock was subject to being set aside by a court of equity.

■■ We come now to a question of procedure. Appellants contend that plaintiffs, having failed to tender to defendants the amount that defendants paid for the stock, are not in a position to maintain this suit. We think it clear under the decision of this court in the case of Troy Mining Co v. White, supra, that the sale of this stock to defendants was not void but voidable at the option of the corporation or of its stockholders upon the refusal of the corporation to act. This action is one to rescind a voidable sale, and the trial court so held. Plaintiffs contend that under the rule announced in the case of Anderson v. Scandia Mining Syndicate, 26 S. D. 558, 128 N. W. 1016, 1022, it was unnecessary for plaintiffs to tender to defendants the amount defendants had paid for this stock. It should be pointed out, however, that the court held the transaction in that case was without the authority of the board of directors and "null and void." That action was not, therefore, brought to rescind a voidable transaction, but one brought to set aside a transaction absolutely void from the beginning. This

court did, nevertheless, indicate in that opinion that in any action brought by the stockholders on behalf of the corporation it was not necessary for the stockholders to offer in advance to restore the money the corporation had received. The court said: "The plaintiffs, having received nothing directly from the defendants * * *, were not required to make any offer to restore to them the money which they had paid."

Under SDC 10.0804, it is only necessary for a rescinding party to restore or offer to restore everything of value "which he has received." These plaintiffs, of course, have received nothing and, when this court in the Anderson case made the statement we have just quoted, we are convinced it intended to align itself with those cases which hold that the suing stockholders having themselves received nothing, although the corporation itself has received benefits, no return or offer to return is necessary, and instead the decree itself may and should protect the defendants by providing for restitution. See Michaels v. Pacific Soft Water Laundry, 104 Cal. App. 349, 286 P. 165, 170, 1071; Continental Securities Co. v. Belmont, 206 N. Y. 7, 99 N. E. 138, 51 L. R. A., N. S., 112, Ann. Cas. 1914A, 777; Permanent Edition, Fletcher on Corporations, Volume 13, Section 5962; Revised Edition, Williston on Contracts, Volume 5, Sections 1529 and 1530. This holding seems to be in accord with our statutory provisions. Obviously, SDC 10.0804, contemplates that when a rescission is decreed for any of the reasons prescribed in SDC 10.0802, justice requires that the party against whom rescission is decreed be reimbursed, and SDC 37.0703, provides: "On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require."

The trial court, however, not only held no tender or offer in advance was necessary, but by its judgment failed and refused to provide that defendants be reimbursed to the extent of the money paid for the stock. In this we believe the trial court was in error.

The judgment and order appealed from are reversed with directions to the trial court to make its decree adjudging a rescission dependent upon the reimbursement of the defendants of the money paid for this stock, and the trial court may, in adjudging the amount necessary to reimburse defendants, take into consideration the dividends defendants have received.

POLLEY, ROBERTS, and SMITH, JJ., concur.

WARREN, P.J., not sitting.